```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| LYDIA HERNANDEZ,<br><br>   Plaintiff,<br><br> v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>   Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 05-2438 (JEI)<br><br>**OPINION** |

**APPEARANCES:**

LANGTON & ALTER, ESQS.
By: Abraham S. Alter, Esq.
P.O. Box 1798
2096 St. Georges Avenue
Rahway, New Jersey 07065
  Counsel for Plaintiff.

CHRISTOPHER J. CHRISTIE, UNITED STATES ATTORNEY
By: Susan Reiss, Esq.
Special Assistant United States Attorney
C/o Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278
  Counsel for Defendant.

**IRENAS**, Senior District Judge:

 Lydia Hernandez ("Hernandez") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), and Section 1634(c)(3) of the Act, 42 U.S.C. § 1383(c)(3), for review of the final determination of the

1

Commissioner of Social Security ("Commissioner") denying Hernandez's application for Social Security Disability Insurance and Supplement Security Income benefits. For the following reasons, this Court affirms the Commissioner's decision.

I.

On June 16, 1994, Hernandez filed an application with the Social Security Administration ("SSA") for a period of disability and disability insurance benefits, alleging that the onset of her disability was December 31, 1992. (R. at 18.) On June 29, 1994, she filed an application for supplemental security income benefits, with the onset alleged as of July 1, 1987. (*Id.*) Hernandez's initial claims were denied on August 1, 1994. (R. at 182.) She filed a request for reconsideration on September 22, 1994. (R. at 189-90.) Her request for reconsideration was denied on January 24, 1995. (R. at 192-96.) Hernandez timely filed a request for a hearing on January 25, 1995. (R. at 209.)

A hearing was held before an Administrative Law Judge ("ALJ") on August 19, 1996, in Newark, New Jersey. (R. at 18.) ALJ Edward McNeil issued a decision on March 24, 1997, holding that Hernandez had "not been under a disability . . . at any time through the date her insured status expired, or at any time through the date of this decision." (R. at 393.) On April 24, 1997, Hernandez requested a review of ALJ McNeil's decision by

the Appeals Council.  The Appeals Council granted her request for review, and on January 7, 1999, remanded the case for further proceedings.[1]  (R. at 395, 398.)

On November 1, 1999, the rehearing took place before ALJ Solomon Goldman in San Juan, Puerto Rico, where Hernandez was then residing.  (R. at 19.)  On July 25, 2000, ALJ Goldman held that Hernandez was "not under a 'disability'. . . at any time through the date of this decision."  (R. at 26.)  Hernandez again requested review by the Appeals Council, which was denied on March 10, 2005,[2] making ALJ Goldman's decision the final decision of the Commissioner.  (R. at 6-8, 11.)  Hernandez filed an appeal with this Court on May 5, 2005.

**II.**

Hernandez is a sixty-five year old female.  She is originally from Puerto Rico, but has lived in Elizabeth, New Jersey, and currently lives in Camden, New Jersey.  Although the

---

[1] The Appeals Council concluded: "[t]he hearing decision, Finding 3 and Page 4, indicates that the claimant has a mental impairment, but does not reflect an evaluation of its severity or effects pursuant to 20 CFR 404.1502a and 416.920a and does not include a Psychiatric Review Technique Form.  The decision indicates that the impairment is severe.  However, the decision does not indicate the nonexertional limitations imposed by the severe mental impairment (20 CFR 404.1545, 404.1569a, 416.945 and 416.969a)."  (R. at 399-400.)

[2] There is no explanation in the record for the five year delay in rendering a decision on Hernandez's request for review.

3

record is inconsistent, it indicates she has at most completed the eighth grade in Puerto Rico, and has subsequently taken classes in flower arranging, macrame, and sewing.  She is unable to communicate in English.  Hernandez has worked as a sewing machine operator and a home care assistant.

Hernandez claims to suffer from primary late onset dysthymia,[3] chronic nephritis,[4] and hypertension.  She suffers from and has received treatment for varying degrees of depression since 1987.  She was first treated at the Manati Mental Health Clinic in Puerto Rico on February 3, 1987, and received treatment there intermittently until February, 1998.  (R. at 453-72.)  According to translations of the records of this treatment received by the ALJ, but not included in the record before this Court, "[h]er visits to the clinic were irregular and by the first months of 1989 she quit her treatment.  She was readmitted in August, 1993, due to the same depressive symptoms."  (R. at 21.)

Hernandez moved to Elizabeth, New Jersey, in January, 1994.  (R. at 142.)  In April, 1994, her son died, and shortly

---

[3] Dysthymia is a chronically depressed mood that occurs for most of the day, more days than not, where the individual describes their mood as "down in the dumps."  *Diagnostic and Statistical Manual of Mental Disorders* 345 (4th ed. 1994).

[4] Chronic nephritis is "active and slowly progressive parenchymal renal disease, usually with a predominantly glomerular lesion."  *Dorland's Illustrated Medical Dictionary* 1108 (28th ed. 1994).

4

thereafter she separated from her husband.  Beginning on May 9, 1994, she was treated at the Elizabeth General Medical Center ("EGMC"), in Elizabeth.  John A. Bostrom, M.D., initially diagnosed her with primary late onset dysthymia, hypertension, and chronic nephritis, with the recommendation that she remain on anti-depressants and undergo psychotherapy.  (R. at 297-99.)  She was examined again on May 17, 1994, and also diagnosed with major depression.  (R. at 301-03.)  In both examinations she was alert, oriented, and insightful.  Over the next few months, she underwent regular counseling sessions with L. Carvajal, a social worker at EGMC, and took Zoloft, a drug commonly prescribed for depression.  (R. at 304-08.)

As of November 19, 1994, Dr. Bostrom's report indicates that, with treatment, Hernandez had improved from severe to moderate depression, and that she was oriented, showed good judgment, good memory, and was able to do housework and socialize.  (R. at 322-25.)  On April 4, 1995, however, she was diagnosed at CAMCare Health Corporation[5] with major depression, and referred for inpatient treatment at Cooper Hospital in Camden, New Jersey.  (R. at 327-28.)  While at Cooper Hospital, she was treated with Prozac for her depression and also received

---

[5] CAMCare is a federally qualified health center which provides health care to impoverished, medically underserved clients.  See New Jersey Primary Care Association, http://www.njpca.org/FQHC/default.aspx (last visited May 23, 2006).

5

medication for her hypertension.  She was discharged on April 13, 1995.  (R. at 341-42.)

In a July, 1994, Functional Capacity Assessment ("FCA"), performed in conjunction with her application for benefits by a state medical agency consultant, Hernandez was found to be well-oriented and cooperative, but with mild to moderate impairment of concentration.  The FCA also concluded that she was able to perform low stress work activities.  (R. at 293.)  Similarly, a FCA performed in December, 1994, concluded that she was able to understand, remember, and execute simple instructions, and was moderately limited in her ability to do so with detailed instructions.  (R. at 287-89.)  Additionally, the Psychiatric Review Technique forms accompanying the FCAs indicate that her impairments were only slight to moderate.  (R. at 269-86.)

On September 1, 1994, Hernandez was admitted to EGMC with bilateral flank pain, which was greater on her right side.  (R. at 311-12.)  After undergoing a cytoscopy, right retrograde pyelogram, and right ureteroscopy, she was diagnosed as having right hydronephrosis[6] and was treated with medication for a urinary tract infection.  (R. at 310-13.)  At a follow up appointment on November 14, 1994, the urologist concluded that Hernandez's discomfort was due to back, and not kidney, pain.

---

[6] Hydronephrosis is "distention of the pelvis and calices of the kidney with urine, as a result of obstruction of the ureter." *Id.* at 785.

6

(R. at 332.)  At both hearings, Hernandez testified that she needed to use the restrooms frequently as a result of her kidney problems.  (R. at 71-72, 156-57.)

### III.

This Court reviews the decision of the ALJ to determine whether there is substantial evidence on the record to support the ALJ's decision.  *See* 42 U.S.C. § 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (citing *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994)).  Any finding of fact made by the ALJ shall be conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate."  *Plummer*, 186 F.3d at 427.

### IV.

A. The Five-Step Sequential Evaluation for Disability Claims

The SSA uses a five-step sequential evaluation process to determine whether an individual is disabled.  20 C.F.R. § 404.1520.  In *Plummer v. Apfel*, the Third Circuit described the five-step evaluation:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity.  20 C.F.R. § 1520(a).  If a claimant is found to be engaged in substantial activity, the disability claim will be denied.  *Bowen v. Yuckert*, 482 U.S. 137, 140, 107

>S.Ct. 2287, 2290-91, 96 L.Ed.2d 119 (1987).  In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment.  20 C.F.R. § 404.1520(c).  If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.
>
>In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work.  20 C.F.R. § 404.1520(d).  If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.  Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work.  20 C.F.R. § 404.1520(d).  The claimant bears the burden of demonstrating an inability to return to her past relevant work.  *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994).  If the claimant is unable to resume her former occupation, the evaluation moves to the final step.
>
>At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability.  20 C.F.R. § 404.1520(f).  The ALJ must show there are other jobs existing in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity.  The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled.  *See* § 404.1523.

186 F.3d at 428.  If a determination about a claimant's disability can be made at any step in the sequential evaluation, the analysis is concluded without continuing on to any remaining steps.  § 404.1520(a)(4).

B. The ALJ's Opinion

In this case, ALJ Goldman held that Hernandez had not been

8

under a disability at any time through July 25, 2000, the date of the decision. (R. at 26.) This determination was reached after proceeding through the first four steps of the sequential evaluation. Upon review of the record, this Court concludes that the ALJ's findings are supported by substantial evidence as required by § 405(g) and *Plummer*.

In the first step, ALJ Goldman found that Hernandez had not engaged in substantial gainful activity since the alleged onset of her disability. (R. at 20.) He determined in the second step that Hernandez suffered from major depression, hypertension and chronic nephritis, which combined are a "severe impairment" because the symptoms had more than a minimal effect on her ability to perform basic work-related activity. (R. at 21.)

ALJ Goldman's analysis of the evidence at each of the first two steps is extremely brief. However, the record establishes that these findings are supported by substantial evidence. Hernandez testified that she had not worked since before December 31, 1993, and her earnings records support this testimony. (R. at 145, 404.) The medical reports in the record from Hernandez's evaluations by multiple doctors support the findings in step two, all of which indicate that Hernandez suffers from depression, hypertension, and chronic nephritis. (R. at 21.)

In the third step, ALJ Goldman determined that Hernandez did not meet or medically equal the listing for affective disorders

found in Section 12.04 of 20 C.F.R. § 404, Subpart P, Appendix 1 ("Appendix"). In reaching this conclusion, the ALJ explicitly stated that he agreed with the opinions of the "State agency medical consultants who evaluated this issue at the initial and reconsideration levels . . . ." (R. at 21.)

Hernandez challenges the ALJ's conclusions at the third step on two grounds. First, she contends that ALJ Goldman's explanation of his reasoning for the third step was not sufficient to satisfy the requirements of *Burnett v. Commissioner of Social Security*, 220 F.3d 112 (3d Cir. 2000). In *Burnett*, the Third Circuit determined that an ALJ's conclusory statement that the claimant's impairment did not meet or equal any listed impairment was inadequate because it did not permit meaningful judicial review of the ALJ's decision. *Id.* at 119-20. The Court remanded the case for further discussion of the evidence and an explanation of the reasoning supporting the ALJ's determination that the claimant's impairment, although severe, did not meet or equal any listed impairment. *Id.* at 120.

In the present case, ALJ Goldman's decision is accompanied by a Psychiatric Review Technique Form, which indicates that the he considered listing 12.04 - Affective Disorders. *Cf. id.* at 119-20 (case remanded for further proceedings where ALJ did not identify the relevant listings); *see also Santiago v. Commissioner*, 113 F. App'x 344, 346 (3d Cir. 2005)(distinguishing

10

*Burnett* where ALJ identified relevant listings).  In order to satisfy this listing, the claimant must have medical documentation of a syndrome (the "A" criteria) that poses a "marked" restriction or difficulty in two functional areas (the "B" criteria).[7]  The Psychiatric Review Technique Form indicates

---

[7] 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
    The required level of severity for these disorders is met when the requirements in both A and B are satisfied . . . .
    A.  Medically documented persistence, either continuous or intermittent, of one of the following:
        1.  Depressive syndrome characterized by at least four of the following:
            a.  Anhedonia or pervasive loss of interest in almost all activities; or
            b.  Appetite disturbance with change in weight; or
            c.  Sleep disturbance; or
            d.  Psychomotor agitation or retardation; or
            e.  Decreased energy; or
            f.  Feelings of guilt or worthlessness; or
            g.  Difficulty concentrating or thinking; or
            h.  Thoughts of suicide; or
            i.  Hallucinations, delusions or paranoid thinking; or
        2.  Manic syndrome characterized by at least three of the following:
            a.  Hyperactivity; or
            b.  Pressure of speech; or
            c.  Flight of ideas; or
            d.  Inflated self-esteem; or
            e.  Decreased need for sleep; or
            f.  Easy distractibility; or
            g.  Involvement in activities that have a high probability of painful consequences which are not recognized; or
            h.  Hallucinations, delusions or paranoid thinking; or
        3.  Bipolar syndrome with a history of episodic

that while the ALJ was satisfied that Hernandez met the "A" criteria, she did not satisfy the "B" criteria. (R. at 27-30.) His assessment is consistent with the evaluations performed by the State examiners. (R. at 21.)

Additionally, in discussing the fourth step, ALJ Goldman performed a detailed analysis of the record, including why he chose not to rely on some of the proffered evidence. (R. at 21-24.) This discussion includes the ALJ's analysis of Hernandez's medical records, psychiatric evaluations and testimony. Although this analysis occurs in conjunction with step four, it is sufficient to enable this Court to meaningfully review the ALJ's assessment at step three.[8] *See Jones v. Barnhart*, 364 F.3d 501,

---

           periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
And
B.    Resulting in at least two of the following:
    1.    Marked restriction of activities of daily living; or
    2.    Marked difficulties in maintaining social functioning; or
    3.    Marked difficulties in maintaining concentration, persistence, or pace; or
    4.    Repeated episodes of decompensation, each of extended duration . . . .
(20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04) Section 12.04 also contains an alternative set of criteria for satisfying the listing, found in Part C, that does not appear to be relevant here.

[8] Hernandez asserts that the ALJ's failure to even mention Dr. Lazlo's testimony in the first hearing necessitates remand

505 (3d Cir. 2004)(stating that ALJ need not use particular language or format but must only provide a "sufficient development of the record and explanation of findings to permit meaningful judicial review").

Second, Hernandez argues that the ALJ failed to consider whether her impairments medically equaled a listed impairment. She contends that even if her mental disorder alone did not satisfy a specific listing, all of her impairments when considered together are equivalent in severity to other listed impairments. According to the regulation,

> [i]f you have more than one impairment, and none of them meets or equals a listed impairment, we will review your symptoms, signs, and laboratory findings about your impairments to determine whether the combination of your impairments is medically equal to any listed impairment.

§ 404.1526(a).

ALJ Goldman discussed Hernandez's other impairments, and it is clear from his opinion that he concluded that they did not add to Hernandez's work-related limitations such that her combined impairments would be medically equivalent to a listed impairment.

---

under *Burnett*. Dr. Lazlo's conclusion that Hernandez met the 12.04 listing was predicated on Hernandez's testimony, which the ALJ specifically found not credible. (R. at 25, 105.) *See Kent v. Schweiker*, 710 F.2d 110, 115 n.5 (3d Cir. 1983)(ALJ may reject conclusions of treating physician if ALJ "weigh[s] [those conclusions] against other relevant evidence and explain[s] why certain evidence has been accepted and why other evidence has been rejected").

He determined that her hypertension was "under adequate control" and specifically cited to her medical records from the Manati Clinic. (R. at 22.) Furthermore, there is no indication anywhere in the record, other than Hernandez's testimony, that her kidney problems affected her ability to work. Hernandez's testimony, even if believed, is not sufficient because, "[the SSA] will always base [its] decisions about whether your impairment(s) is medically equal to a listed impairment on medical evidence only." § 404.1526(b).

The ALJ found that "[Hernandez's] alleged pain and other symptoms are not credible and not supported by the objective medical and other evidence in the record." (R. at 25.) "A claimant's subjective statements about pain or other symptoms, without more, cannot be the basis for a disability." *Jaramillo v. Commissioner*, 130 F. App'x 557, 562 (3d Cir. 2005). Hernandez has offered no other evidence that suggests that her combined impairments would be medically equivalent to a listed impairment. *Ballardo v. Barnhart*, 68 F. App'x 337, 338 (3d Cir. 2003) ("However, a claimant bears the burden of producing evidence that her impairment is equivalent to a listed impairment, and equivalence to a listed impairment must be determined on the basis of medical findings 'supported by medically acceptable clinical and laboratory techniques.'")(citations omitted).

In the fourth sequential step, the ALJ concluded that

Hernandez is capable of performing her previous job as a sewing machine operator.  (R. at 25.)  Hernandez contends that this decision is erroneous because the ALJ failed to explicitly mention or discuss the testimony of Abugetna Meola, the vocational expert who testified at the first hearing, or the FCAs conducted in July and December, 1994.  The ALJ specifically referenced the FCAs and the testimony of Dr. Hector Guerra, a vocational expert who testified at the rehearing, and stated that they were the basis for his conclusion that Hernandez could perform the job of sewing machine operator.  (R. at 23-25.)  Dr. Guerra, the vocational expert who testified at the rehearing, stated that Hernandez would be able to perform her previous job as a sewing machine operator.  (R. at 166.)  The July, 1994, FCA noted that she could perform "low-stress work activity."  (R. at 291-93.)  The December, 1994, FCA concluded that she was able to maintain attention, concentration, pace, and persistence without significant limitation.  (R. at 287-89.)  Furthermore, ALJ Goldman acknowledged Meola's testimony at the first hearing.  (R. at 18.)

    Contrary to Hernandez's assertion, Meola did not testify that she would not be able to return to her job under the facts as found by the ALJ.  In response to a hypothetical question posed by Hernandez's attorney, Meola testified that if a claimant had high blood pressure, needed to urinate at least once an hour

and was moderately limited in her ability to understand detailed instructions, interact with the public, maintain concentration and perform within a schedule, there "would be no work that a person could do on a sustained basis." (R. at 132.) ALJ Goldman, however, noted that there was no objective medical evidence to support Hernandez's claim that she needed to urinate frequently, and that her hypertension was controlled. These conclusions are supported by substantial evidence. Although ALJ Goldman did not discuss Meola's testimony, he sufficiently developed the record with regard to the fourth step so as to permit meaningful review of his decision.

Accordingly, this Court finds that the ALJ's decision was supported by substantial evidence in all respects.

## V.

For the aforementioned reasons, the Court will affirm the final decision of the Commissioner denying Hernandez's application for disability benefits. The Court will issue an appropriate order.

Dated:   May 31 , 2006

s/ *Joseph E. Irenas*
JOSEPH E. IRENAS, S.U.S.D.J.